**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOSEPH SCHAEFFER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:03 CV 60 CAS (LMB) |
| | ) | |
| DON ROPER, | ) | |
| | ) | |
| Respondent. | ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the court on the petition of Joseph Schaeffer for a writ of habeas corpus under 28 U.S.C. § 2254. This cause was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b).

**Procedural History**

Petitioner is presently incarcerated at Potosi Correctional Center in Mineral Point, Missouri, pursuant to the judgment and sentence of the Circuit Court of Jefferson County, Missouri. See Respondent's Exhibit A at 54-56. On June 24, 1999, petitioner was found guilty after a jury trial of two counts of first degree statutory sodomy, one count of first degree child molestation, and one count of furnishing pornographic material to minors. See id. He was sentenced to life imprisonment on each sodomy count, to run consecutively; seven years imprisonment on the child molestation count, to run consecutively; and one year imprisonment on the furnishing pornographic material to minors count, to run concurrently. See id.

Petitioner raised a single point on direct appeal of his convictions. <u>See</u> Resp't Ex. C. Petitioner argued that the trial court erred in denying his motions for judgment of acquittal because the State failed to prove beyond a reasonable doubt that petitioner committed the crimes charged. <u>See</u> <u>id.</u> at 9. On July 18, 2000, the Missouri Court of Appeals for the Eastern District affirmed petitioner's convictions in an unpublished order opinion. <u>See</u> Resp't Ex. E.

On October 4, 2000, petitioner filed a <u>pro</u> <u>se</u> motion to vacate, set aside, or correct the judgment of the Circuit Court of St. Louis County, Missouri, pursuant to Missouri Supreme Court Rule 29.15. <u>See</u> Resp't Ex. F at 5-12. Petitioner filed an "Amended Motion to Vacate, Set Aside, or Correct the Judgment or Sentence" on November 8, 2000, in which he argued that he was denied effective assistance of counsel for the following reasons: (1) trial counsel failed to file a motion to sever the furnishing of pornography count from the other counts, thereby allowing a videotape showing sexual activity among petitioner, his wife, and his neighbor to be introduced at trial; (2) trial counsel failed to file a motion in limine to exclude the introduction of the videotape showing sexual activity among petitioner, his wife, and his neighbor; (3) trial counsel were ineffective in allowing petitioner to testify at trial when he had taken an overdose of prescription medication prior to testifying; (4) trial counsel failed to present the testimony of petitioner's wife at trial; (5) trial counsel failed to bring out on cross-examination of Sherry Flieger or the victim that Sherry Flieger had been the victim of sexual abuse as a child; (6) trial counsel failed to prove that Sherry Flieger told the victim that she would be taken away from her parents if she was lying in her accusations; (7) trial counsel failed to make a motion to permit the jury to view the scene or in the alternative for failing to take photographs of the trailer and put them in evidence; and (8) trial counsel failed to request a mistrial the morning petitioner lost control in front of the jury.

See id. at 14-16. An evidentiary hearing was held regarding petitioner's postconviction relief motion on March 9, 2001. See Resp't Ex. G. Petitioner, petitioner's sister, petitioner's mother, and petitioner's father testified on behalf of petitioner. See id. The State presented the testimony of petitioner's two trial counsel, Bradford Kessler and Kenneth Schwartz. See id. The motion court entered a judgment on April 30, 2001, wherein the court denied petitioner's motion for postconviction relief. See Resp't Ex. F at 41-46.

Petitioner timely filed a notice of appeal from the denial of postconviction relief. See id. at 54. Petitioner raised three points on appeal from the denial of postconviction relief. See Resp't Ex. H. Petitioner first argued that the motion court clearly erred in denying his claims that he received ineffective assistance of counsel because trial counsel failed to move to sever the furnishing pornography count or failed to move to exclude evidence of this count. See id. at 9. In his second point relied on, petitioner claimed that the motion court clearly erred in denying his claim that he received ineffective assistance of counsel because trial counsel called petitioner to testify in his own behalf at trial when petitioner had ingested large quantities of prescription medications prior to testifying. See id. at 11. In his final point relied on, petitioner argued that the motion court clearly erred in denying his clam that he received ineffective assistance of counsel because trial counsel failed to impeach Sherry Flieger. See id. at 13. On February 5, 2002, the Missouri Court of Appeals for the Eastern District affirmed the denial of postconviction relief. See Resp't Ex. J.

Petitioner filed a motion to recall the mandate in April 2002. See Petitioner's Exhibit 1-A. The Missouri Court of Appeals for the Eastern District denied petitioner's motion in an order dated May 2, 2002. See id. On November 7, 2002, petitioner filed a petition for a writ of habeas

corpus pursuant to Missouri Supreme Court Rule 91. See Petitioner's Exhibit 1-B, 1-C.

Petitioner argued that he received ineffective assistance of counsel for the following reasons:

(1) trial counsel failed to conduct an adequate pretrial investigation and call expert witnesses with

regard to physical and behavioral evidence of the victim; (2) trial counsel failed to call Dr. Paul as

a witness; and (3) trial counsel failed to call Jeff and Cathy Luedloff as witnesses. See id. The

Missouri Court of Appeals for the Eastern District denied petitioner's petition for writ of habeas

corpus in an order dated February 25, 2003. See Pet's Ex. 1-C.

On January 23, 2003, petitioner, pro se, filed the instant petition for a writ of habeas

corpus, raising the following grounds for relief: (1) he was denied his rights to due process and a

fair trial when the trial court denied his motion for judgment of acquittal because the State failed

to prove beyond a reasonable doubt that he committed the crimes charged; (2) he received

ineffective assistance of counsel because trial counsel failed to file a motion to sever the furnishing

pornography count from the other charges; (3) he received ineffective assistance of counsel

because trial counsel allowed petitioner to testify when he had overdosed on prescription

medication prior to testifying; (4) he received ineffective assistance of counsel because trial

counsel failed to impeach Sherry Flieger; (5) the State court committed reversible error in denying

his Motion to Recall the Mandate of the Missouri Court of Appeals because Missouri Supreme

Court Rule 29.15 was an inadequate remedy where petitioner's appellate counsel was also

postconviction counsel, thereby creating a conflict of interest, which led appellate counsel to fail

to raise the issue on direct appeal that the trial court erred in allowing the State to introduce the

victim's testimony and hearsay testimony of numerous witnesses; (6) the State court committed

reversible error in denying his Motion to Recall the Mandate of the Missouri Court of Appeals

- 4 -

because Missouri Supreme Court Rule 29.15 was an inadequate remedy where petitioner's appellate counsel was also postconviction counsel, thereby creating a conflict of interest, which led appellate counsel to fail to raise the issue that the trial court erred in allowing the State to present the hearsay testimony of several witnesses; (7) the State court committed reversible error in denying his Motion to Recall the Mandate of the Missouri Court of Appeals because Missouri Supreme Court Rule 29.15 was an inadequate remedy where petitioner's appellate counsel was also postconviction counsel, thereby creating a conflict of interest, which led appellate counsel to fail to raise the issue that the trial court committed plain error in finding petitioner to be a prior offender; (8) he received ineffective assistance of counsel because trial counsel failed to conduct an adequate pretrial investigation and call expert witnesses with regard to physical and behavioral evidence of the victim; (9) he received ineffective assistance of counsel because trial counsel failed to call Dr. Paul as a witness; and (10) he received ineffective assistance of counsel because trial counsel failed to call Cathy and Jeff Luedloff as witnesses.  <u>See</u> Doc. No. 4.  On February 27, 2003, respondent filed a Response to Order to Show Cause, in which he argues that petitioner has procedurally defaulted his eighth, ninth, and tenth grounds for relief, and petitioner's remaining grounds for relief fail on their merits.  <u>See</u> Doc. No. 9.  Petitioner has also filed a Traverse, in which he provides further argument in support of his petition.  <u>See</u> Doc. No. 12.

<u>Facts</u>

Petitioner's convictions result from the commission of sex acts with his stepdaughter, Shauna Roloff ("Victim") who was eight years old at the time the acts began.

The victim testified at trial on behalf of the prosecution.  She testified that she and her brother visited their mother and stepfather every other weekend.  <u>See</u> Resp't Ex. B at 652.  The

victim testified that her stepfather began sexually assaulting her beginning in 1997, until March 1998, when she was staying with her mother and stepfather at their trailer. See id. at 660-61. The victim stated that petitioner abused her in her own room and would sometimes remove her from her own bed and take her to the living rom or to his bedroom where he then abused her. See id. at 661. She testified that on one occasion, petitioner abused her while her mother was sleeping beside her. See id. at 701.

The victim testified that petitioner touched her chest and vagina with his hands and inserted his fingers in her vagina. See id. at 656-57. She stated that petitioner licked her vagina and also stuck his tongue in her vagina. See id. at 660. The victim testified that on one occasion, petitioner attempted to insert his penis into her vagina but she squeezed her legs together to stop him. See id. at 657-58. The victim stated that petitioner forced her to touch his penis with her hands and mouth. See id. at 658-60. She testified that on one occasion, petitioner pushed down on her head and forced her to put his penis in her mouth. See id. The victim explained that petitioner "peed" in her mouth and then put his hand over her mouth until she swallowed the "pee." See id. The victim further testified that petitioner forced her to watch sexually explicit videotapes, including one that showed her mother, petitioner, and a male neighbor engaging in sexual activities. See id. at 655-56.

The victim testified that after she was forced to watch the videotape of her mother engaging in sexual acts, she reported the abuse because she became afraid of what else petitioner would coerce her to do. See id. at 664-65. She stated that she first told Bonnie Sax and Debbie Midore, mothers of children on her brother's hockey team, that she had watched the videotape of her mother. See id. at 661-62, 676-78. The victim testified that when another "hockey mom,"

Sherry Flieger, asked her what had happened, she told her about the videotape and the sexual abuse. See id. at 662, 678-79. The victim stated that after telling Ms. Flieger about the abuse, she then told her father. See id. at 662. The victim testified that she was then taken to St. Anthony's Hospital, where she was examined. See id.

Sherry Flieger testified that she approached the victim at a hockey game that the victim's father was coaching on March 13, 1998, based on a comment the victim had made two nights before that she was very upset at her mother and stepfather. See id. at 296-97. Ms. Flieger stated that she asked the victim why she was upset. See id. at 297. Ms. Flieger testified that the victim responded that her stepfather made her watch a "dirty movie" involving her mother, stepfather, and a male neighbor. See id. at 298-99. Ms. Flieger testified that the victim then proceeded to tell her that her stepfather had been sexually abusing her. See id. at 299. Specifically, Ms. Flieger testified that the victim told her that her stepfather wakes her up in the middle of the night, and forces her to touch his penis, puts his penis in her mouth and "pees" in her mouth, puts his mouth on her vagina, puts his finger on and inside her vagina, and forces her to watch "dirty" movies. See id. at 299-300. Ms. Flieger testified that the victim said this abuse began in the summer of 1997, stopped around Christmas, and resumed the beginning of 1998. See id. at 300. Ms. Flieger testified that she told the victim's father about the abuse immediately following the hockey game that he was coaching. See id. at 301-02.

Russell Roloff, the victim's father, testified that Ms. Flieger approached him after a hockey game on March 13, 1998, and told him that the victim had been abused by her stepfather. Se id. at 353-56. Mr. Roloff testified that he immediately questioned his daughter, who confirmed that she had in fact been sexually abused by her stepfather. See id. at 356. Mr. Roloff testified

that the victim told him that her stepfather had forced her to touch his penis, touched her vagina with his fingers, fondled her breasts, and put his penis in her mouth. <u>See</u> <u>id.</u> at 358. Mr. Roloff testified that the victim told him that her stepfather had sexually abused her 20 to 30 times. <u>See</u> <u>id.</u> at 359. Mr. Roloff testified that the victim told him that on one occasion, her stepfather tried to put his penis insider her vagina but she stopped him. <u>See</u> <u>id.</u> at 361. Mr. Roloff stated that the victim also told him that her stepfather made her watch a movie of her mother, her stepfather, and a male neighbor doing "mean, nasty things," which scared her. <u>See</u> <u>id.</u> at 361-62. Mr. Roloff testified that when the victim was telling him about the abuse, she was very upset and was crying. <u>See</u> <u>id.</u> at 362. Mr. Roloff testified that he and Ms. Flieger took the victim to St. Anthony's hospital that night to be examined. <u>See</u> <u>id.</u> at 363-64. Mr. Roloff testified that the victim was examined by a doctor, talked to a social worker, Karen Diemert, and spoke to police at St. Anthony's. <u>See</u> <u>id.</u> at 364-65. Mr. Roloff testified that he took the victim to Children's Hospital three days later, based upon the recommendation of St. Anthony's. <u>See</u> <u>id.</u> at 365-66. Mr. Roloff testified that the victim was examined at Children's Hospital and that she also spoke to Nancy Duncan at Children's Hospital. <u>See</u> <u>id.</u> at 366.

Karen Diemert, a social worker for St. Anthony's Medical Center, testified that she spoke with the victim on March 13, 1998. <u>See</u> <u>id.</u> at 414. Ms. Diemert testified that the victim told her that her stepfather had sexually abused her. <u>See</u> <u>id.</u> at 415. Ms. Diemert testified that the victim described in detail the sexual abuse and that the victim was upset and crying when she was describing the abuse. <u>See</u> <u>id.</u> at 416-17. Ms. Diemert testified that the victim stated that she was scared to sleep at night because she was afraid of what might happen to her and that she was doing poorly in school because she was unable to concentrate. <u>See</u> <u>id.</u> at 418. Ms. Diemert

stated that the victim described the abuse in a very child-like manner and that the victim did not appear to have any knowledge of sex. See id. at 419.

Ray Edler, a detective with the Jefferson County Police Department, testified that he responded to St. Anthony's Hospital on March 13, 1998 to investigate a sex offense. See id. at 428-29. Deputy Edler testified that he spoke with the victim in the emergency room at St. Anthony's. See id. at 430. Deputy Edler testified that the victim told her that her stepfather had been sexually abusing her and described the abuse. See id. at 431. Deputy Edler stated that the victim was calm and relaxed when he spoke to her. See id. at 432. Deputy Edler testified that he contacted Detective Shane Knoll with the Sheriff's Department, who conducted a follow-up investigation. See id. at 433. Deputy Edler testified that he prepared a report after speaking with the victim. See id. at 433-34.

Shane Knoll, who was formerly employed as a detective at the Jefferson County Sheriff's Department, testified that he interviewed the victim at St. Anthony's on March 13, 1998. See id. at 445-46. Mr. Knoll testified that the victim told him that she had been sexually abused by her stepfather 10 to 20 times and described the abuse. See id. at 448. Mr. Knoll testified that the victim was quiet and looked at the floor while describing the sexual abuse. See id. at 451. Mr. Knoll testified that the victim's mother, Cathy Schaeffer, came to the Sheriff's Department to give a statement on March 17, 1998. See id. He testified that Ms. Schaeffer wanted to talk to the victim to determine whether she was telling the truth. See id. Mr. Knoll testified that after talking to the victim, Ms. Schaeffer stated that she believed the victim was telling the truth. See id. at 456. Mr. Knoll testified that he and Sergeant Carl obtained a search warrant for petitioner's residence on March 17, 1998. See id. at 452. Mr. Knoll testified that he searched petitioner's

residence for videotapes and other evidence pertaining to the sexual abuse of the victim. See id. at 453.

Detective Michael Gray, a detective with the Jefferson County Sheriff's Department, testified that he executed a search warrant at petitioner's residence on March 17, 1998. See id. at 479. Detective Gray testified that he seized fourteen standard size videotapes, six compact tapes, two VCRs, a video camera, and computer equipment. See id. at 481. Detective Gray testified that the majority of the videotapes that he seized involved sexually explicit material. See id. at 483. Detective Gray testified that some of the videotapes containing sexually explicit material were professionally made and some of the videotapes containing sexually explicit material were homemade. See id. at 488-496. Detective Gray testified that several of the videotapes containing sexually explicit material involved Ms. Schaeffer. See id. Detective Gray testified that one of the videotapes contained sexually explicit material involving a "three-way encounter" between petitioner, Ms. Schaeffer, and a white male. See id. at 490-91.

Nancy Duncan, a pediatric nurse practitioner at St. Louis Children's Hospital, testified that she met with the victim on March 16, 1998. See id. at 518. Ms. Duncan testified that she spoke with the victim, videotaped an interview with the victim, and then performed a physical examination of the victim. See id. Ms. Duncan testified that the victim was referred to Children's Hospital by St. Anthony's because the examiner at St. Anthony's found physical evidence of sexual abuse. See id. at 519. Ms. Duncan testified that the victim described in detail the sexual abuse by her stepfather. See id. at 521. Ms. Duncan stated that the victim appeared to be a normal nine-year-old, as far as her developmental level. See id. at 521. Ms. Duncan testified that the victim told her that she was afraid to tell her mother about the abuse because she was afraid

that her mother would not believe her or would yell at her or hit her. See id. at 523. Ms. Duncan testified that the victim stated that when she viewed the movie of her mother, stepfather, and the neighbor, she knew that her mother was against her and she decided to report the abuse. See id. at 525. Ms. Duncan testified that the victim appeared to be embarrassed and upset when she was talking about the sexual abuse. See id. at 526. Ms. Duncan testified that the victim did not know proper anatomical terms or sexual terms and that she spoke as if she had actually experienced the events she described. See id. at 528-29.

Ms. Duncan testified that she conducted a physical examination of the victim after the interview, consisting of a head to toe physical and an inspection of the genitals. See id. at 529-30. Ms. Duncan testified that the examination revealed that the victim appeared to be normal. See id. at 531. Ms. Duncan stated that, although the examiner at St. Anthony's found a defect of the victim's hymen, she found the victim's hymen to be normal and found no signs of any tears. See id. at 532-33, 536. Ms. Duncan testified that she concluded that the victim's history and physical examination were consistent with sexual abuse. See id. at 537-38. The videotape of Ms. Duncan's interview with the victim was played for the jury. See id. at 589.

Sandy Scharnhorst, a detective with Jefferson County Sheriff's Department, testified that she was called to the prosecutor's office to conduct an interview with the victim and to watch the victim while she viewed a videotape. See id. at 722. Detective Scharnhorst testified that she showed the victim the videotape involving the victim's mother, stepfather, and neighbor, to determine whether the victim had viewed the videotape. See id. at 724. Detective Scharnhorst testified that she questioned the victim while the tape was playing to determine whether that was the tape that she had previously viewed. See id. Detective Scharnhorst testified that, based on

the victim's response, she continued to play the videotape. See id. at 726. Detective Scharnhorst testified that if the victim indicated that she had not seen the videotape, she would not have continued to show the videotape. See id. The videotape was played for the jury. See id. at 730.

Debbie Midore, Steven Roloff, and petitioner testified on behalf of petitioner. Debbie Midore testified that her son plays hockey on a team coached by the victim's father, Russell Roloff. See id. at 738. Ms. Midore testified that at a hockey game in March of 1998, the victim told her that her stepfather forced her to watch some movies. See id. at 740. Ms. Midore testified that, after the victim told her this, the victim ran off and began playing with other children. See id. Ms. Midore stated that the victim did not seem upset at that time. See id. Ms. Midore testified that the victim did not tell her that her stepfather had sexually abused her in any way. See id. at 740-41. Ms. Midore testified that a few minutes later, she told Sherry Flieger what the victim had told her, after which Ms. Midore's involvement in the matter ended. See id. at 742.

Steven Roloff, the victim's twelve-year-old brother, testified that he and the victim have their own rooms at their mother's house, which are located right next to each other. See id. at 751. He stated that their mother alternated between sleeping with him and the victim during the summer of 1997. See id. at 752. Steven testified that the victim has a small single bed in her room at their mother's house. See id. at 753. He testified that the victim has lied in the past. See id. at 754. Steven testified that he never heard any noise at night coming from the hallway or from the victim's room, and that he is a sound sleeper. See id. He testified that the victim told him that she hated their stepfather. See id. at 755. Steven testified that he never saw petitioner pick the victim up and carry her into another room or act abusive in any way towards the victim.

See id. at 756.  Steven stated that the victim indicated in the summer of 1997 that she wanted to live with her mother and stepfather.  See id. at 757-58.

Petitioner testified that he and the victim have not gotten along since he got into a fist fight with the victim's father in 1995 or 1996.  See id. at 798.  Petitioner testified that the victim stayed at his home for three weeks during the summer of 1997, after which she decided that she wanted to live with her mother and stepfather permanently.  See id. at 799-800.  Petitioner stated that the victim presented him with homemade cards on two different occasions, the first sometime around Christmas of 1997, and the second one sometime around his birthday in February of 1998.  See id. at 804-05.  Petitioner testified that he kept the videotape containing sexually explicit material involving himself, his wife, and another man in the VCR in his entertainment center.  See id. at 813-14.  Petitioner stated that all one would have to do in order to view this videotape is press the "play" button on the VCR.  See id. at 814.  Petitioner testified that he kept the commercial sexually explicit videotapes underneath the entertainment center and in the closet. See id. at 815.  Petitioner stated that he never intended for the victim or anyone else to view these videotapes.  See id.  Petitioner denied ever showing the victim any sexually explicit videotapes. See id. at 816.  Petitioner testified that he never touched the victim in an inappropriate way.  See id.

I.    **Standard of Review**

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d), which provides:

> (d)  An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be

granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed § 2254(d) in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). With respect to the "contrary to" language, a majority of the Court held that a state court decision is contrary to clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if "the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." 529 U.S. at 413, 120 S.Ct. at 1523. Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case." <u>Id.</u> Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." <u>Id.</u> at 409, 120 S.Ct. 1521. Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." <u>Id.</u> at 1410, 120 S.Ct. 522.

## II.    <u>Petitioner's Claims</u>

Petitioner raises ten grounds for relief. The undersigned will address each ground for

relief in turn.

1.      **Ground One**

In his first ground for relief, petitioner argues that he was denied his rights to due process and a fair trial when the trial court denied his motion for judgment of acquittal because there was insufficient evidence to convict him of the crimes charged.  Specifically, petitioner contends that the only evidence relied on was the victim's medically unsupportable and uncorroborated testimony.  Respondent argues that there was sufficient evidence for a jury to convict petitioner of the crimes charged.

The standard for reviewing the sufficiency of the evidence is set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  In Jackson, the United States Supreme Court held that the appropriate inquiry under due process for reviewing the sufficiency of evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  443 U.S. at 319, 99 S.Ct. at 2789.  Further, "[t]he state is 'not required to rule out every hypothesis except that of guilt beyond a reasonable doubt.' " Flieger v. Delo, 16 F.3d 878, 883 (8th Cir. 1994) (quoting Perez v. Groose, 973 F.2d 630, 634 (8th Cir. 1992)).  The federal court "must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and must defer to that resolution."  Miller v. Leapley, 34 F.3d 582, 585 (8th Cir. 1994). This Circuit has "recognized that the verdict 'may be based in whole or in part on circumstantial evidence.' " Hill v. Norris, 96 F.3d 1085, 1088 (8th Cir. 1996) (quoting United States v. Anderson, 78 F.3d 420, 422 (8th Cir. 1996)).

A review of the record reveals that the evidence adduced at trial was clearly sufficient to

support a guilty verdict on all charges. Statutory Sodomy in the First Degree is defined by

Missouri Revised States § 566.062, which, in pertinent part, states:

> 1. A person commits the crime of statutory sodomy in the first degree if he has deviate sexual intercourse with another person who is less than fourteen years old.

Mo. Rev. Stat. § 566.062.1 (1998). "Deviate sexual intercourse" is defined as:

> any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however, slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person.

Mo. Rev. Stat. § 566.010(1) (1998).

The victim testified that petitioner stuck his tongue in her vagina. See Resp't Ex. B at

660. The victim also testified that petitioner forced her to touch his penis with her hands and

mouth. See id. at 658-60. The victim testified that on one occasion, petitioner forced her to put

his penis into her mouth and then "peed" in her mouth. See id. at 658-59. The victim was ten

years old at the time she testified and was in the fourth grade. See id. at 650. The victim testified

that she was in second and third grade when petitioner sexually abused her. See id. at 660. Thus,

a rational juror could find from the evidence presented at trial the essential elements of two counts

of Statutory Sodomy in the First Degree.

Child Molestation in the First Degree is defined by Missouri Revised Statutes § 566.067 as

follows:

> 1. A person commits the crime of child molestation in the first degree if he or she subjects another person who is less than fourteen years of age to sexual contact.

Mo. Rev. Stat. § 566.067(1) (1998). "Sexual contact" is defined as:

> any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person.

Mo. Rev. Stat. § 566.010(3) (1998).

The victim testified that petitioner touched her chest and her vagina with his hands and inserted his fingers in her vagina. See id. at 656-57. The victim also testified that petitioner forced her to touch his penis. See id. at 659. The victim testified that she was in second and third grade when petitioner committed these acts. See id. at 660. As such, there was sufficient evidence presented at trial for a rational juror to find the essential elements of child molestation beyond a reasonable doubt.

Furnishing Pornographic Material to Minors is defined by Missouri Revised Statutes § 573.040 as follows:

> 1. A person commits the crime of furnishing pornographic material to minors if, knowing its content and character, he or she:
> (1) Furnishes any material pornographic for minors, knowing that the person to whom it is furnished is a minor or acting in reckless disregard of the likelihood that such person is a minor; or
> (2) Produces, presents, directs or participates in any performance pornographic for minors that is furnished to a minor knowing that any person viewing such performance is a minor or acting in reckless disregard of the likelihood that a minor is viewing the performance; or
> (3) Furnishes, produces, presents, directs, participates in any performance or otherwise makes available material that is pornographic for minors via computer, electronic transfer, Internet or computer network if the person made the matter available to a specific individual known by the defendant to be a minor.

Mo. Rev. Stat. § 573.040.1 (1998). "Pornographic for minors" is defined as follows

> any material or performance is pornographic for minors if the following apply:
> (a) The average person, applying contemporary community standards, would find that the material or performance, taken as a whole, has a tendency to cater or appeal to a prurient interest of minors; and
> (b) The material or performance depicts or describes nudity, sexual conduct, sexual excitement, or sadomasochistic abuse in a way which is patently offensive to the average person applying contemporary adult community standards with respect to what is suitable for minors; and
> (c) The material or performance, taken as a whole, lacks serious literary, artistic, political, or scientific value for minors.

Mo. Rev. Stat. § 573.010(11) (1998).

The victim testified that petitioner forced her to watch sexually explicit videotapes, including a videotape depicting the victim's mother having sex with petitioner and a male neighbor. See id. at 655. The victim, who was ten years old when she testified, was clearly a minor when this videotape was shown to her. Petitioner admitted to possessing the videotapes, including the videotapes involving petitioner, his wife, and the male neighbor. See id. at 813-14. Thus, a rational juror could have found the essential elements of Furnishing Pornographic Material to Minors beyond a reasonable doubt.

Petitioner attacks the credibility of the victim, by claiming that she is a liar. The trier of fact is entitled to make the ultimate decision of whether testimony is to be believed. See Loeblein v. Dormire, 229 F.3d 724, 726 (8th Cir. 2000); Barger v. United States, 204 F.3d 1180, 1182 (8th Cir. 2000). Further, "[a] victim's testimony is, by itself, normally sufficient to sustain a conviction." Loeblein, 229 F.3d at 726. See United States v. Wright, 119 F.3d 630, 634 (8th Cir. 1997). In this case, a reasonable trier of fact could have believed the victim's testimony and found the essential elements of each charge.

Accordingly, the undersigned recommends that petitioner's first ground for relief be denied.

### 2.    Ground Two

In his second ground for relief, petitioner argues that he received ineffective assistance of counsel because trial counsel failed to file a motion to sever the furnishing pornography count from the other charges. Petitioner contends that the evidence presented regarding the furnishing pornography charge was highly inflammatory and prejudicial. Respondent argues that the

Missouri Court of Appeals properly found that trial counsel was not ineffective in failing to file a motion to sever because filing the motion to sever would have been futile.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that his attorney failed to exercise the degree of skill and diligence a reasonably competent attorney would exercise under similar circumstances, and additionally, the petitioner must show that he was prejudiced by his attorney's action or inaction. See Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). A petitioner must show that "counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment." Id. "Prejudice" is shown by a petitioner when it is demonstrated that there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. Id. at 694, 104 S.Ct. at 2068. A "reasonable probability" is defined as a probability sufficient to undermine confidence in the outcome. Id. The petitioner must not only assert prejudice, but must affirmatively prove that prejudice was present. See id. at 693, 104 S.Ct. at 2067. A habeas petitioner "must overcome the strong presumption that in the circumstances of his case 'the challenged action might be considered sound trial strategy.' " Seehan v. State of Iowa, 72 F.3d 607, 611 (8th Cir. 1995) (quoting Strickland, 466 U.S. at 689, 104 S.Ct. at 2065).

Petitioner raised this same claim in his motion for postconviction relief and in his appeal from the denial of postconviction relief. The Missouri Court of Appeals held as follows with regard to petitioner's claim:

> The testimony of co-counsel before the motion court shows that they did not file a motion to sever the furnishing pornography count because they believed such motion would not have been successful, and because they had filed a motion to sever two drug counts. Counsel believed the motion to sever the drug counts had a better chance to succeed if it did not include the furnishing pornography count.
> Counsel testified they did not file a motion to sever the pornography count because

it was part of the "res gestae" of the sexual crimes. One co-counsel testified that there were allegations that the sexual contact had occurred either right before or right after the victim saw the videotape. The other co-counsel testified that he did not think such motion would be successful, and that the videotape probably would have been admitted into evidence even if the count were severed. He also testified that the motion to sever the drug counts had a better chance to succeed if it did not include the furnishing pornography count.

The motion court found that a motion to sever the furnishing pornography count would have been an exercise in futility. The court cited Rule 23.05 and said it was clearly appropriate to try the furnishing pornography count together with the other counts, reasoning that the same child was the victim in all four counts, and the furnishing pornography count was intimately related to the other counts. The court also found that it was likely that the videotape would have been admitted into evidence even if no pornography count had been brought.

Failure to perform a futile act does not rise to the level of ineffective assistance of counsel. Section 545.140.2RSMo 2000 and Rule 23.05 permit joinder of two or more offenses that are of the same or similar character, or are based on the same act or transaction, or on two or more acts or transactions connected together, or that constitute parts of a common scheme or plan.

Charges are properly joined if the incidents are part of a "common scheme or plan," or part of the same transaction. State v. Terry, 928 S.W.2d 879, 885 (Mo.App.E.D. 1996). In a case involving a single defendant acting alone, the test in determining whether a common scheme or plan exists is the requirement that the offenses charged must be the product of a single or continuing motive. Terry at 885. Here the single or continuing motive is [petitioner's] desire for sexual contact with victim. Therefore, it is clear that the charges were properly joined.

Resp't Ex. J at 4-5.

The Missouri Court of Appeals properly found that trial counsel were not ineffective for not filing a motion to sever. Trial counsel testified at the evidentiary hearing that they did not file a motion to sever the furnishing pornography count because they did not believe it would have been successful. See Resp't Ex. G at 69, 106-07. One of petitioner's co-counsel testified that the furnishing pornography count was part of the "res gestae" of the sexual crimes because petitioner allegedly showed the videotape either right before or right after the sexual contact. See id. at 69. The other co-counsel testified that he did not believe a motion to sever the pornography count would have been successful because it was so intertwined with the other charges. See id. at 106.

He further testified that he thought he would have an increased likelihood of success on his motion to sever the drug counts if it did not include the furnishing pornography count.  See id.

Trial counsel's decision not to file a motion to sever the furnishing pornography count was reasonable trial strategy.  The furnishing pornography count was intimately related to the other counts and was, therefore, properly joined with the other counts.  Filing a motion to sever the furnishing pornography count would have been futile.  Thus, trial counsel was not ineffective for failing to file a meritless motion to sever.

Accordingly, the undersigned recommends that petitioner's second ground for relief be denied.

### 3.      Ground Three

In his third ground for relief, petitioner argues that he received ineffective assistance of counsel because trial counsel allowed petitioner to testify after he had overdosed on prescription medication.  Specifically, petitioner claims that counsel knew that petitioner had ingested 20 to 30 Valium and Librium the night before and morning of his testimony, which impaired his ability to testify and destroyed his credibility.  Respondent contends that trial counsel acted reasonably in allowing petitioner to testify because there were no outward signs that petitioner was unable to testify.

Petitioner raised this claim in his postconviction relief motion and in his appeal from the denial of postconviction relief.  The Missouri Court of Appeals held as follows:

> [c]o-counsel testified that on the day [petitioner] testified he did not notice anything unusual about [petitioner's] demeanor, that [petitioner] presented himself in the same way he had presented himself throughout the trial, and that [petitioner] gave no indication he did not understand what they were talking about.  With regard to taking excessive medication, co-counsel testified that he was aware that [petitioner] may have taken an excessive amount of medication the night before his testimony, but that the only

conversation about drugs he recalled with [petitioner] during the trial was [petitioner's] complaint that the security personnel were not giving him his prescription medication. Co-counsel testified that he had listened to [petitioner's] testimony during trial, and that [petitioner] gave no indication he did not understand the questions. Co-counsel testified that on the morning of [petitioner's] testimony he believed [petitioner] was able to testify.

The other co-counsel, who conducted the direct examination of [petitioner] at trial, testified that, on the morning of [petitioner's] testimony, he was not incoherent, and gave no indication that he did not understand what was going on, or was unable to handle cross-examination.

The motion court indicated that it believed the testimony of counsel, and since credibility of the witnesses is a matter for the motion court, we find no error. Stewart at 918, 919.

Resp't Ex. J at 6-7.

Petitioner has not demonstrated that the decision of the Missouri Court of Appeals was contrary to, or involved an unreasonable application of, clearly established federal law. As the Missouri Court of Appeals correctly noted, the motion court was well-positioned to assess the credibility of trial counsel and found their testimony to be credible. Trial counsel testified that petitioner conducted himself in the same manner on the day he testified as he had throughout the trial. See Resp't Ex. G at 71, 109. They testified that petitioner appeared to be coherent and gave no indication that he did not understand counsel's questions. See id. at 73, 110-111. Further, the transcript of petitioner's testimony provides no indication that petitioner did not understand counsel's questions. Rather, petitioner responded to counsel's questions appropriately. Thus, trial counsel was not ineffective for allowing petitioner to testify.

Accordingly, the undersigned recommends that petitioner's third ground for relief be denied.

**4.      Ground Four**

In his fourth ground for relief, petitioner argues that he received ineffective assistance of counsel because trial counsel failed to impeach Sherry Flieger. Specifically, petitioner claims that

trial counsel should have impeached Ms. Flieger based upon bias because Ms. Flieger was a victim of sexual abuse. Respondent argues that the Missouri Court of Appeals properly found that petitioner did not show that questioning Ms. Flieger concerning her past sexual abuse would have benefitted petitioner's defense.

Petitioner raised this claim in his motion for postconviction relief and on appeal from the denial of postconviction relief. The Missouri Court of Appeals held as follows with regard to petitioner's claim:

> [i]n his third point on appeal [petitioner] contends that counsel were ineffective for failure to impeach the witness [Sherry Flieger] on bias because she had given damaging testimony at trial concerning statements made to her by victim incriminating [petitioner]. [Ms. Flieger] was the first person to whom victim told what [petitioner] did to her. [Petitioner] contends that [Ms. Flieger] had a history of sexual abuse, that the trial court ruled that counsel could cross-examine her on this history, and that counsel told the jury in his opening statement that this evidence would be forthcoming, but then refused to cross-examine [Ms. Flieger] regarding it because it was "distasteful to him." Co-counsel testified that he did not question [Ms. Flieger] about sexual abuse she may have suffered because he believed such evidence was not relevant, and did not impeach the testimony of victim.
>
> The motion court found that [petitioner] offered no evidence to show what [Ms. Flieger's] testimony would have been concerning any abuse suffered by her, and how it would have aided [petitioner's] defense. Without such evidence the court found no basis on which it could make a finding that trial counsel's failure to cross-examine [Ms. Flieger] was prejudicial to [petitioner].
>
> Generally, the subjects covered and the extent of cross-examination are matters of trial strategy that must be left to the judgment of counsel. State v. Whitfield, 939 S.W.2d 361, 370 (Mo. banc 1997), cert. denied 522 U.S. 831 (1997). Ordinarily a defendant is not entitled to relief merely because defense counsel elects not to present evidence of dubious impeachment value. State v. Twenter, 818 S.W.2d 628, 643 (Mo. banc 1991). Here there is no showing how the cross-examination of [Ms. Flieger] concerning her past sexual abuse would have benefitted [petitioner's] defense. Point denied.

Resp't Ex. J at 7.

Petitioner has not demonstrated that the decision of the Missouri Court of Appeals was contrary to, or involved an unreasonable application of, clearly established federal law. Trial

counsel testified that evidence regarding Ms. Flieger's past sexual abuse was not relevant and would not have impeached the testimony of the victim. See id. at 76-77. As the Missouri Court of Appeals properly noted, the extent of cross-examination is a matter of trial strategy that must be left to the judgment of counsel. Further, petitioner has offered no evidence showing what Ms. Flieger's testimony would have been and how this testimony would have aided his defense. Thus, trial counsel was not ineffective for failing to question Ms. Flieger regarding prior sexual abuse.

Accordingly, the undersigned recommends that petitioner's fourth ground for relief be denied.

### 5.    Grounds Five, Six, and Seven

In petitioner's fifth, sixth, and seventh grounds for relief, petitioner argues that the State court erred in denying his Motion to Recall the Mandate of the Missouri Court of Appeals because Missouri Supreme Court Rule 29.15 was an inadequate remedy where petitioner's appellate counsel was also postconviction counsel, thereby creating a conflict of interest. In his fifth ground for relief, petitioner argues that this conflict of interest caused appellate counsel to fail to brief the issue that the trial court erred in allowing the State to introduce the victim's testimony and hearsay testimony of numerous witnesses. In his sixth ground for relief, petitioner claims that the conflict of interest caused appellate counsel to fail to brief the issue that the trial court erred in allowing the State to present the hearsay testimony of several witnesses. Finally, in his seventh ground for relief, petitioner argues that the conflict of interest caused counsel to fail to brief the issue that the trial court committed plain error in finding petitioner to be a prior offender. Respondent argues that petitioner's claims are noncognizable because there is no constitutional right to a postconviction proceeding.

The court finds that these claims are not cognizable in the court's habeas review. "[A]n infirmity in a state-post conviction proceeding does not raise a constitutional issue cognizable in a federal habeas corpus petition." See Gee v. Groose, 110 F.3d 1346, 1351 (8th Cir. 1997). This rule is founded on the principle that there is no constitutional right to a state post-conviction proceeding and irregularities which occur therein do not rise to the level of constitutional violations. See Pennsylvania v. Finley, 481 U.S. 551, 557, 106 S.Ct. 1990, 1994, 95 L.Ed.2d 539 (1987); Coleman v. Thompson, 501 U.S. 722, 752, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991). Because petitioner was not constitutionally entitled to a post-conviction proceeding, he cannot claim constitutional error in the fact that the proceeding did not adequately address his claims.

Accordingly, the undersigned recommends that petitioner's fifth, sixth, and seventh grounds for relief be denied.

### 6.     Grounds Eight, Nine, and Ten

In his eighth, ninth, and tenth grounds for relief, petitioner alleges ineffective assistance of counsel claims based on trial counsel's failure to call certain witnesses. In his eighth ground for relief, petitioner argues that trial counsel failed to conduct an adequate and proper pretrial investigation and call expert witnesses regarding physical and behavioral evidence of the victim. In his ninth ground for relief, petitioner claims that trial counsel failed to call Dr. David Paul, or someone similarly qualified, as a witness. In his tenth ground for relief, petitioner argues that trial counsel failed to call Cathy and Jeff Luedloff as witnesses. Respondent contends that these claims are procedurally defaulted and they fail on their merits as well.

### A.    Procedural Default

It is well-established that the procedural default rule requires a habeas petitioner to pursue all available avenues of relief in the state courts before the federal courts can consider the claim. See 28 U.S.C. § 2254(b); Duvall v. Purkett, 15 F.3d 745, 746 (8th Cir. 1994).  In addressing this issue, a federal court must give deference to state courts and should place great importance on state procedural rules.  See Buckley v. Lockhart, 892 F.2d 715, 718 (8th Cir. 1989).  By virtue of these considerations, "[a] federal court can consider the merits of a habeas corpus petition only when the prisoner has 'fairly presented to the state courts the substance of his [or her] federal habeas corpus claim.'"  Id. (quoting Martin v. Solem, 801 F.2d 324, 333 (8th Cir. 1986)(internal citations omitted)).  To avoid procedural default, "Missouri procedure requires that a claim be presented 'at each step of the judicial process.'"  Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir. 1994) (quoting Benson v. State, 611 S.W.2d 538, 541 (Mo. Ct. App. 1980)), cert. denied, 513 U.S. 983, 115 S.Ct. 462, 130 L.Ed.2d 370 (1994)).  If a petitioner cannot demonstrate cause, then the court need not determine whether the petitioner has suffered actual prejudice.  See Leggins v. Lockhart, 822 F.2d 764, 768 (8th Cir. 1987), cert. denied, 485 U.S. 907, 108 S.Ct. 1080, 99 L.Ed.2d 239 (1988).  In the present case, petitioner did not raise the claims contained in grounds eight, nine, or ten in his motion for postconviction relief or on appeal from the denial of postconviction relief.  As such, petitioner has defaulted these claims.

Further, petitioner fails to show "cause" for his procedural default.  Petitioner claims in his traverse that his procedural default should be excused because he was not aware of the existence of these claims at the time of his postconviction proceeding.  Petitioner's argument lacks merit, however, because the claims at issue involve the failure of trial counsel to call witnesses.  As such,

petitioner was necessarily aware of these claims at the time of his postconviction proceeding. Because petitioner has not shown cause for his procedural default, this court need not address the "actual prejudice" prong of the inquiry. See Leggins, 822 F.2d at 768.

A federal habeas court may also reach the merits of procedurally defaulted claims where the petitioner can demonstrate that a "miscarriage of justice" exception applies. This narrow exception is limited to extraordinary circumstances where actual innocence can be demonstrated. See Murray v. Carrier, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986). The petitioner must show that a constitutional violation "probably resulted" in the conviction of an innocent person. See Schlup v. Delo, 513 U.S. 298, 326-29, 115 S.Ct. 851, 867-68, 130 L.Ed.2d 808 (1995). Petitioner does claim that his procedural default should be excused under the miscarriage of justice exception because he is actually innocent. The evidence, however, is strongly supportive of petitioner's guilt and petitioner has presented no additional evidence suggesting his innocence. Petitioner's bare allegation that he is innocent is insufficient to excuse his procedural default. Thus, petitioner has procedurally defaulted grounds eight, nine, and ten.

### B. Merits of Grounds Eight, Nine, and Ten

The court has already pointed out that petitioner has procedurally defaulted his eighth, ninth, and tenth grounds for relief. Even if these claims were not procedurally defaulted, they fail on their merits as well.

### Ground Eight

In his eighth ground for relief, petitioner argues that he received ineffective assistance of counsel because trial counsel failed to conduct an adequate and proper pretrial investigation and failed to call expert witnesses regarding physical and behavioral evidence of the victim.

Specifically, petitioner claims that trial counsel should have called Dr. Steven Thurber, Ph.D, and Dr. Charles R. Honts, Ph.D. Petitioner asserts that these witnesses would have testified that the victim's statement contained all of the earmarks of a false allegation. Respondent argues that petitioner has failed to overcome the presumption that counsel's decision not to call these witnesses was reasonable trial strategy.

Counsel's decision not to interview or call a particular witness is evaluated from the perspective of counsel at the time the decision was made. Parker v. Bowersox, 94 F.3d 458, 461 (8th Cir. 1996). The question is whether trial counsel's performance, when viewed in this light, "fell outside the wide range of professionally reasonable performance." Id. (citing Strickland, 406 U.S. at 687, 104 S.Ct. at 2064). A habeas petitioner "must overcome the strong presumption that in the circumstances of his case 'the challenged action might be considered sound trial strategy.'" Seehan v. State of Iowa, 72 F.3d 607, 611 (8th Cir. 1995) (quoting Strickland, 466 U.S. at 689, 104 S.Ct. at 2065). An attorney's performance is objectively reasonable, where counsel determined that testimony from witnesses identified by a defendant would be detrimental and rationally declined to call the witnesses as a matter of trial strategy. See United States v. Smith, 62 F.3d 1073, 1078 (8th Cir. 1995).

In this case, petitioner has not overcome the presumption that trial counsel acted in accordance with "sound trial strategy." Petitioner did not present this claim to the state courts. As such, trial counsel has not had the opportunity to detail their reasons for not calling these witnesses. However, the record reveals that trial counsel extensively questioned the prosecution's medical witnesses who had examined the victim. Trial counsel's trial strategy was likely to weaken the medical testimony offered in the prosecution's case. Further, if Dr. Thurber or Dr.

Honts had testified, their testimony would not have shown that petitioner was innocent of the crimes charged. They would have only provided expert testimony regarding general credibility factors of child sexual abuse victims. These witnesses had no personal knowledge of the victim or the specific crimes charged. Petitioner cannot, therefore, show adequate prejudice. Thus, it cannot be said that the decision not to call these witnesses "fell outside the wide range of professionally reasonable performance."

Accordingly, the undersigned recommends that petitioner's eighth ground for relief be denied.

### **Ground Nine**

In his ninth ground for relief, petitioner argues that he received ineffective assistance of counsel because trial counsel failed to call Dr. David Paul, or someone similarly qualified, as a witness. Petitioner contends that Dr. Paul would have testified that the victim's statement that petitioner "put his fingers inside her private parts lots of times," was unreliable and was not supported by physical evidence. Doc. No. 3 at 45. Respondent argues that petitioner has not overcome the burden that trial counsel's failure to call this witness was reasonable trial strategy.

As with petitioner's eighth ground for relief, trial counsel has not had the opportunity to provide their reasons for not calling this witness. However, petitioner has not shown that this witness would have in fact testified that the victim's statement was unreliable. Petitioner also claims that this witness would have testified that there was no physical evidence supporting the victim's allegations. Nancy Duncan, the pediatric nurse practitioner that examined the victim, testified on behalf of the prosecution that her physical examination of the victim revealed no abnormalities. See Resp't Ex. B at 531. As such, trial counsel could have reasonably determined

that Dr. Paul's testimony that there was no physical evidence supporting the victim's allegations would not have aided petitioner's defense. Thus, it cannot be said that the decision not to call Dr. Paul "fell outside the wide range of professionally reasonable performance."

Accordingly, the undersigned recommends that petitioner's ninth ground for relief be denied.

### Ground Ten

In his tenth and final ground for relief, petitioner claims that he received ineffective assistance of counsel because trial counsel failed to call Cathy and Jeff Luedloff as witnesses. Petitioner contends that the testimony of these witnesses would have impeached the credibility of the victim and Sherry Flieger. Petitioner stated that Cathy Luedloff would have testified that the victim was not "acting upset" on the day of petitioner's arrest. Doc. No. 4 at 51. Petitioner claims that Jeff Luedloff would have testified that Sherry Flieger told him that she instructed the victim how to answer questions. Petitioner states that Jeff Luedloff also would have testified that the victim acted normally around the time that she reported the abuse. Respondent argues that petitioner has not overcome the burden that trial counsel's failure to call these witnesses was reasonable trial strategy.

Petitioner has not shown that trial counsel's decision not to call these witnesses was anything but sound trial strategy. As discussed with regard to petitioner's grounds eight and nine, trial counsel's exact reasons for not calling these witnesses is unknown because petitioner did not present this claim to the state courts. The testimony that these witnesses would have offered, however, would not have shown that petitioner was innocent of the crimes charged. These witnesses would have merely provided their opinions regarding the credibility of the victim.

Defense counsel extensively questioned the victim and presented witnesses who testified regarding the victim's credibility.  As such, petitioner is unable to demonstrate prejudice.  Thus, it cannot be said that the decision not to call Cathy and Jeff Luedloff "fell outside the wide range of professionally reasonable performance."

Accordingly, the undersigned recommends that petitioner's tenth ground for relief be denied.

**III.    Certificate of Appealability**

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right. See 28 U.S.C. § 2253(c)(2); Hunter v. Bowersox, 172 F.3d 1016, 1020 (8th Cir. 1999). A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997)(citing Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir. 1994)); Tokar v. Bowersox, 1 F. Supp.2d 986, 1016 (E.D. Mo. 1998). In this case, petitioner has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, the undersigned recommends that no certificate of appealability be issued.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the petition of Joseph Schaeffer for a writ of habeas corpus under 28 U.S.C. § 2254 be **denied**.

**IT IS FURTHER RECOMMENDED** that no certificate of appealability be issued.

The parties are advised they have eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636 (b) (1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  See Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

Dated this __3rd__ day of March, 2006.

_Lewis M. Blanton_

LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE